**SO ORDERED.**

**SIGNED January 16, 2013.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA

IN RE:

GULF FLEET HOLDINGS, INC., et al,      CASE NO. 10-50713

    Debtors                                Chapter 11
                                              (Jointly Administered
                                              with Case Nos. 10-50714
                                              thru 10-50723)
----------------------------------------------------------------
ALAN GOODMAN, TRUSTEE FOR THE
GULF FLEET LIQUIDATING TRUST,

    Plaintiff

VERSUS                                 ADVERSARY CASE NO. 12-05024

TRIPLE "C" MARINE SALVAGE, INC.,

    Defendant
----------------------------------------------------------------
### REASONS FOR DECISION
----------------------------------------------------------------

    This adversary proceeding involves preference claims by Alan Goodman, the trustee of the Gulf Fleet Liquidating Trust (the "Trustee") against Triple "C" Marine Salvage, Inc. ("Triple 'C'").

The Trustee filed a motion for summary judgment on its preference claims as well as Triple "C"'s defenses.  The court took the motion under advisement following oral argument.  After considering the summary judgment record, the parties' arguments, and the relevant authorities, the court **GRANTS IN PART AND DENIES IN PART** the motion for summary judgment for the following reasons.

## JURISDICTION

This case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana.  No party in interest has requested a withdrawal of the reference.  The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Moreover, the court may enter final orders on the claims and defenses asserted in this case under <u>Stern v. Marshall</u>, ___U.S. ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). <u>See</u> <u>First Choice Drywall, Inc.</u> <u>v. Presbitero (In re First Choice Drywall, Inc.)</u>, 2012 WL 4471570 (Bankr. N.D. Ill. Sept. 25, 2012)(bankruptcy court has the power to determine preference actions after <u>Stern</u> ); <u>Olsen v. PG</u> <u>Design/Build, Inc. (In re Smeltzer Plumbing Sys., Inc.)</u>, 2011 WL 6176213 (Bankr. N.D. Ill. Dec. 12, 2011)(same); <u>Nanodynamics, Inc.</u> <u>v. Rothstein (In re Nanodynamics, Inc.)</u>, 474 B.R. 422, 429 (Bankr. W.D.N.Y. 2012) (same); <u>Appalachian Fuels, LLC v. Energy Coal</u>

-2-

Resources, Inc. (In re Appalachian Fuels, LLC), 472 B.R. 731, 744
(E.D. Ky. 2012) (same); In re Am. Hous. Found., 469 B.R. 257, 265
(Bankr. N.D. Tex. 2012) (same); In re DBSI, Inc., 467 B.R. 767, 773
(Bankr. D. Del. 2012) (same); West v. Freedom Medical, Inc. (In re
Apex Long Term Acute Care-Katy, LP.), 465 B.R. 452, 463 (Bankr.
S.D. Tex. 2011) (same); Burtch v. Huston (In re USDigital, Inc.),
461 B.R. 276, 285 (Bankr. D. Del. 2011) (same).

## BACKGROUND

Gulf Fleet owned and operated a fleet of offshore and fast
supply vessels that supported oil and gas exploration and
production companies and other oilfield service companies.  Gulf
Fleet also operated an independent vessel brokerage business.
Defendant Triple "C" supplies used equipment and parts for marine
vessels.  In November 2009, Gulf Fleet purchased four reconditioned
capstans for installation on its vessels.  Two of the capstans,
represented by invoice number 20091201-C, were delivered on
November 25, 2009.  One of these capstans was installed on the M\V
Miss Emma Jo and the other was installed on the M\V Gulf Pride.
The other two capstans, represented by invoice number 20091212-C,
were installed on the M\V Gulf Quest and the M\V Gulf Carrier.  The
summary judgment record does not establish when these two capstans
were actually delivered.  The invoice for the first two capstans is
dated December 1, 2009 and reflects a purchase price of $13,000.00.

-3-

The invoice for the other two capstans is dated December 11, 2009 and reflects a purchase price of $14,400.00. Gulf Fleet paid invoice number 20091201-C with a check issued on February 9, 2010. This check cleared on February 16, 2010. Gulf Fleet paid invoice number 20091212-C with a check dated February 23, 2010. This check cleared on February 25, 2010. Gulf Fleet filed for relief under Chapter 11 of the Bankruptcy Code on May 14, 2010. Comerica Bank filed a proof of claim in the bankruptcy case asserting a secured claim totaling $38,126,869.78 and asserting a security interest in all of the vessels owned by the debtors, including the four vessels on which the capstans purchased from Triple "C" were installed. This court subsequently approved Gulf Fleet's motion to sell certain vessels, including these four vessels, free and clear of all liens and interests. See Sale Orders dated April 29, 2011 and March 29, 2011, Case No. 10-50713, Dkt. Nos. 840 and 912. Based on the sale orders and Gulf Fleet's confirmed plan of reorganization, Comerica Bank received a distribution from the proceeds of these sales. Because these proceeds were insufficient to satisfy Comerica's claim, Comerica retained an unsecured deficiency claim. See May 2, 2002 Order, Case No. 10-50713, Dkt. No. 1233.

Gulf Fleet's confirmed plan of reorganization created the Gulf Fleet Liquidating Trust, which was charged, *inter alia*, with liquidating the remaining assets and claims of Gulf Fleet. The

-4-

plan transferred certain avoidance actions to the trust. Alan Goodman was subsequently appointed trustee of the Gulf Fleet Liquidating Trust. On February 16, 2012, the Trustee commenced this adversary proceeding seeking to avoid the two payments to Triple "C" under 11 U.S.C. § 547 as avoidable preferences. On May 8, 2012, the court entered a scheduling order that set deadlines for discovery, pre-trial motions, and a trial date. On October 2, 2012, approximately forty-five days after the discovery cut-off and just over two weeks before trial, the Trustee filed a motion in limine seeking to bar Triple "C" from presenting expert testimony and undisclosed witnesses and evidence. The Trustee contended that it had served written interrogatories and requests for production of documents on Triple "C" within the discovery period. This written discovery requested that Triple "C" identify witnesses with knowledge, disclose the identity of any expert witnesses, and produce documents that Triple "C" intended to use to support its defenses at trial. The Trustee also served requests for admission. Because Triple "C" failed to timely respond to this discovery, the Trustee requested that Triple "C" be barred from presenting any expert testimony under Federal Rules of Evidence 702, 703, or 705, and that Triple "C" be further barred from relying on any witnesses or documents that it did not identify or produce in response to written discovery requests. The court entered an order granting

-5-

the Trustee's motion in part. Triple "C" was precluded from offering any expert testimony and testimony from any fact witnesses other than Jack Cloutier, Mary Cloutier, and Ryan Pecoraro. The Trustee subsequently filed the present motion for summary judgment asserting that he is entitled to judgment as a matter of law on his *prima facie* case under 11 U.S.C. § 547 as well as Triple "C"'s affirmative defenses.

DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P 56(a). The purpose of summary judgment is to pierce the pleadings, to assess the proof, and to determine whether there is a genuine need for trial. See Matsushita Electric Industries v. Zenith Radio Corp. 475 U.S. 574, 587 (1986). Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). If the movant bears the burden of persuasion at trial on a claim or defense addressed in the motion for summary judgment, the movant must establish that there is no genuine dispute of material fact as to those claims or defenses. To satisfy this burden, the movant must come forward

-6-

with competent summary judgment evidence conclusively establishing that no reasonable trier of fact could find other than for the moving party.  See Calderone v. United States, 799 F. 2d 254, 259 (6th Cir. 1986).  To avoid summary judgment, the non-movant must then come forward with evidence showing that there is a genuine dispute of material fact.

If the non-moving party has the burden of persuasion at trial with respect to an issue addressed in the motion for summary judgment, the moving party may satisfy its initial burden by either (1) demonstrating affirmatively that there is no triable issue of fact as to each element of the non-moving party's affirmative defenses or claims, or (2) "showing" that the non-moving party cannot present evidence sufficient to satisfy the essential elements of its defenses or claims and thus cannot meet its burden of persuasion at trial.  Celotex Corp., 477 U.S. at 324-326.  If the moving party makes a showing that there is "no evidence" to support the non-moving party's claims or defenses, the non-moving party must come forward with "substantial" evidence showing a genuine dispute of material fact with respect to each essential element of its affirmative defenses or claims.  Id. Substantial evidence for purposes of defeating summary judgment is evidence sufficient to support a jury verdict in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-252 (1986).

-7-

Under this standard, the non-movant cannot rely on unsupported assertions or arguments, but must submit sufficiently probative evidence supporting its claims or defenses. Even if the burden shifts to the non-moving party, the movant still retains the ultimate burden of persuasion on the motion for summary judgment. Celotex Corp., 477 U.S. at 330-331.

**B. The Trustee's Preference Claim**

The Trustee has the burden of persuasion at trial with respect to each of the elements of a preference claim under section 547(b). Accordingly, in order to prevail on summary judgment, the Trustee must establish that there is no genuine dispute of material fact with respect to each element of his preference claim, and that he is entitled to judgment as a matter of law. Section 547(b) provides that a trustee may avoid any transfer of an interest of the debtor in property:

(1) to or for the benefit of a creditor;

(2) for or an account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made–

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the

-8-

> time of such transfer was an
> insider; and

>  (5)  that enables such creditor to receive more
>       than such creditor would receive if-
>
>    (A)  the case were a case under chapter 7
>         of this title;
>
>    (B)  the transfer had not been made; and
>
>    (C)  such creditor received payment of
>         such debt to the extent provided by
>         the provisions of this title.

11 U.S.C. § 547(b)

The summary judgment record establishes the first three elements of the Trustee's preference claim as a matter of law. Gulf Fleet's two February 2010 payments to Triple "C" represented a transfer of Gulf Fleet's property to a creditor on account of an antecedent debt. Specifically, the debt was created when Triple "C" delivered the capstans to Gulf Fleet and Gulf Fleet became obligated to pay for those capstans. See Laws v. United Missouri Bank, 98 F.3d 1047, 1049-51 (8th Cir. 1996). The Trustee can also rely on the presumption of insolvency during the ninety-day reach-back period. See 11 U.S.C. § 547(f). Triple "C"'s response does not reveal any genuine dispute of material fact with respect to these elements of the Trustee's claim.

To prevail on summary judgment, the Trustee must also establish that the two February 2010 payments to Triple "C" fell

-9-

within the ninety-day period prior to the filing of the bankruptcy petition. The first check to Triple "C" was issued on February 9, 2010, and was honored on February 16, 2010. Although the first check was issued outside the ninety-day preference period, the date the check was honored controls whether or not the transfer occurred within the preference period. See <u>Barnhill v. Johnson</u>, 503 U.S. 393 (1992); <u>In re AMWC, Inc</u>., 94 B.R. 428 (Bankr. N.D. Tex. 1988). The first check was honored eighty-seven days prior to the petition date, and thus falls within the ninety-day preference period. The second check was issued February 23, 2010, and was honored on February 25, 2010. The second check was honored seventy-eight days prior to the petition date, and, like the first payment, falls within the ninety-day preference period.

To prevail on his claim, the Trustee must also establish that Triple "C" received more than it would have received in a hypothetical Chapter 7 liquidation as a result of these two payments. 11 U.S.C. § 547(b)(5). This requirement "simply carries out 'the common sense notion that a creditor need not return a sum received from the debtor prior to bankruptcy if the creditor is no better off *vis-a-vis* the other creditors of the bankruptcy estate than he or should would have been had the creditor waited for liquidation and distribution of the assets of the estate.'" <u>In re Hager</u>, 109 F.3d 201, 210 (4th Cir. 1997) (quoting <u>In re Virginia-</u>

<u>Carolina Finance Corp</u>., 954 F.2d 193, 198-99 (4th Cir. 1992)).
Here, Triple "C" asserts that it had a valid maritime lien on the
four vessels on which its capstans were installed. Ordinarily, a
payment to a fully secured creditor does not satisfy section
547(b)(5) because that creditor would not receive more than it
would otherwise receive in a Chapter 7 liquidation upon the sale of
its collateral. Here, however, the summary judgment record
establishes that even if Triple "C" had a valid maritime lien on
the four vessels, its lien was outranked by Comerica Bank's "U.S.
Preferred Mortgage" on Gulf Fleet's vessels. <u>See</u> 46 U.S.C. §§
31326, 31301. Comerica's preferred ship mortgage was perfected in
2007, almost two years before Triple "C"'s lien allegedly arose.
Given that Comerica Bank was undersecured, Triple "C" would not
have received any proceeds from the sale of the four vessels on
which its capstans were installed. Accordingly, Gulf Fleet's two
February 2010 payments to Triple "C" allowed it to receive more
than it would have received in a hypothetical Chapter 7
liquidation.

    In sum, the Trustee has met his burden of showing that there
is no genuine dispute of material fact with respect to each of the
essential elements of this preference claim under section 547(b).

**C.  Triple "C"'s Ordinary Course Defense**

    Triple "C" argues that the February 2010 payments nevertheless
fall within the "ordinary course" exception of 11 U.S.C. §

-11-

547(c)(2). Section 547(c)(2) provides that an otherwise avoidable transfer is not subject to avoidance:

> to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms ....

11 U.S.C. § 547(c)(2). The ordinary course exception is an affirmative defense, so Triple "C" has the burden of persuasion as to each element of the defense. In re Gulf City Seafoods, 296 F.3d 363, 368 n.5 (5th Cir. 2002). Based on the summary judgment record, there is no genuine dispute that the purchase of the four capstans and the corresponding debt was *incurred* in the ordinary course. Rather, the dispute centers on whether the transfers were made in the ordinary course of both parties (which is a subjective inquiry) or whether the transfers were made according to ordinary business terms as reflected in the relevant industry (which is an objective inquiry). In re SGM Acquisition Co. LLC, 439 F3d 233, 239 (5th Cir. 2006).

The Trustee first contends that Triple "C" cannot meet its burden under the subjective prong of section 547(c)(2). According to the Trustee, the February 2010 payments were not made in the ordinary course of dealing of the parties because the transactions

-12-

were isolated one-time transactions and there is no other history of dealings between the parties. The subjective prong of the ordinary course defense requires a fact-specific examination of the parties' conduct to determine "whether the transactions between the debtor and the creditor before and during the ninety-day period are consistent." Lightfoot v. Amelia Maritime Services, Inc., (In re Seabridge Marine, Inc.), 412 B.R. 868, 872 (Bankr. E.D. La. 2008). The factors that courts consider include (1) the time period over which the parties engaged in similar transactions, (2) whether the amount or form of payment differ from past practices, (3) the presence of any unusual collection activity, and (4) whether the creditor took actions that gained it an advantage over other creditors in light of the debtor's deteriorating financial condition. See Kleven v. Household Bank F.S.B., 334 F. 3d 638, 642 (7th Cir. 2003); In re Quad Systems Corp., 2003 WL 25947345 at *5 (Bankr. E.D. Pa. 2003). A creditor typically addresses these factors by establishing a "baseline of dealing" as far as the parties' past billing, payment, and collection practices. In re Accessair, Inc., 314 B.R. 386, 393 (8th Cir. BAP 2004) (creditor had "the burden of establishing some baseline of dealings between the parties prior to the preference period"). A creditor must establish that the challenged transfer occurring during the preference period falls within the normal pattern of payment

-13-

practices between the parties during the pre-preference period.
Id. The Trustee contends that Triple "C" cannot produce evidence
to establish this baseline of dealing because there was no pre-
preference period course of dealing between the parties. The
payments during the preference period resulted from the only
transactions between the Gulf Fleet and Triple "C". However, the
fact that the alleged preferential transfers represent the only
transactions between the parties does not bar the ordinary course
defense as a matter of law. See Kleven, 334 F. 3d at 642 (most
courts "view that a first-time transaction is not per se ineligible
for protection from avoidance under § 547(c)(2)"); see also In re
Finn, 909 F. 2d 903 (6th Cir. 1990); In re Russell Cave Co., 259
B.R. 879 (Bankr. E.D. Ky. 2001). In cases involving one-time
transactions, courts look to the terms of the parties' agreement as
reflected in invoices or other documents. See Kleven, 334 F. 3d at
642-43. Where the payment varies from the terms of an invoice,
courts may look to other evidence that the payment was consistent
with the parties' agreement. See In re Quad Systems Corp., 2003 WL
25947345 at *7 ("Despite the fact that courts generally take into
account the payment terms of the underlying agreement between the
parties, there is no inflexible rule that late payments cannot be
ordinary"). Here, the invoices at issue included the terms "net 30
days with 1 ½% per month interest charged on delinquent account,

-14-

plus 25% attorney fees due on principle and interest if placed in the hands of attorney for collection." <u>See</u> Trustee's Memorandum in Support of Motion for Summary Judgment or Partial Summary Judgment, Exhibits A and C, Case No. 12-05024, Dkt. No. 19. There is no dispute that the February 2010 payments were not made within thirty days of the two December 2009 invoices. Triple "C", however, points to the affidavit of a company representative, Jude A. "Jac" Cloutier, who testifies that he and Gulf Fleet's representative, Ryan Pecoraro, agreed to extend the time for payment until after Gulf Fleet was able to install the capstans and test them to ensure that they would operate on Gulf Fleet's vessels. <u>See</u> Triple "C"'s Statement of Material Facts, Affidavit of Jude Cloutier, Case No. 12-05024, Dkt. No. 27. In considering this evidence on summary judgment, the court must view Triple "C"'s summary judgment evidence in the light most favorable to Triple "C" and must draw all reasonable inferences in Triple "C"'s favor. In order to satisfy its burden at trial, Triple "C" must ultimately present credible admissible evidence of the terms of the parties' agreement with respect to payment as well as proof that the February 2010 payments were consistent with that agreement. For purposes of summary judgment, however, the court concludes that Triple "C" has met its burden of demonstrating that there are genuine disputes of material fact with respect to the subjective prong of the ordinary course defense.

-15-

The court further concludes that there are genuine disputes of material fact with respect to the objective prong of the ordinary course defense. The objective prong of section 547(c)(2) requires the creditor to show that the challenged transfers were consistent with the relevant industry standard. In order to satisfy this burden, courts require creditors to offer evidence of payment practices between other creditors and debtors in the relevant industry. In re Gulf City Seafoods, Inc., 296 F. 3d at 369 ("In our view, for an industry standard to be useful as a rough benchmark, the creditor should provide evidence of credit arrangements of other debtors and creditors in a similar market, preferably both geographic and product."). This standard cannot be satisfied by proof of the creditor's own dealings with the debtor or other parties, but "requires reference to some external data" involving other creditors and debtors in the relevant industry. In re Merry-go-round Enterprises, Inc., 272 B.R. 140, 147 (Bankr. D. Md. 2000); In re Roblin Industries, Inc., 78 F. 3d 30, 43 (2d Cir. 1996) (creditor did not sustain its burden of proof at trial because it did not produce evidence of industry practice or custom apart from the creditor's own experience). Triple "C" again relies on the affidavit of Mr. Cloutier, who testified that it is customary for sellers of used equipment for marine vessels to delay their payment deadline until after a buyer has an opportunity to install and test the equipment on its vessel. See Triple "C"'s

-16-

Statement of Material Facts, Affidavit of Jacque Cloutier attached thereto, Case No. 12-05024, Dkt. No. 27. Mr. Cloutier further testified that this delay is necessary for used and reconditioned equipment because such equipment may not always be compatible with a vessel. Id. Mr. Cloutier further testified that he has worked in the used and reconditioned equipment business for twenty-two years and, in the past, owned and operated work boats. Id. In order to prevail at trial, Triple "C" will have to introduce credible and admissible evidence establishing the industry standard and further showing that the February 2010 payments were consistent with that standard. However, for purposes of summary judgment, the affidavit of Mr. Cloutier is sufficient to demonstrate a genuine dispute of material fact with respect to whether or not the February 2010 payments were consistent with the relevant industry standard for purposes of section 547(c)(2).

**D.  Triple "C"'s New Value Defense**

Triple "C" contends that even if the Trustee has satisfied each of the elements of a preference claim, the two February payments are subject to the "new value" defenses of 11 U.S.C. §§ 547(c)(1)and 547(c)(4). Section 547(c)(1) provides that a trustee may not avoid a transfer to the extent that the transfer was "intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange of new value given to the debtor" and that it was "in fact a substantially

-17-

contemporaneous exchange." Section 547(c)(4)provides an exception

for transfers "to or for the benefit of a creditor, to the extent

that, after such transfer, such creditor gave new value to or for

the benefit of the debtor – (A) not secured by an otherwise

unavoidable security interest; and(B) on account of which new value

the debtor did not make an otherwise unavoidable transfer to or for

the benefit of such creditor." For purposes of both provisions,

"new value" is defined as "money or money's worth and goods,

services, or new credit, or release by a transferee of property

previously transferred to such transferee in a transaction that is

neither void nor voidable by the debtor or the trustee under

applicable law...." 11 U.S.C. § 547(a)(2). In other words, the

creditor must establish that it provided the debtor with "something

new that is of tangible value." In re Martin Wright Electric Co.,

2008 WL 114926 at *9 (Bankr. W.D. Tex. Jan. 9, 2008) (citing In re

Fuel Oil Supply & Terminaling, Inc., 837 F. 2d 224, 230 (5th Cir.

1988)). Triple "C" contends that it held a maritime lien on Gulf

Fleet's vessels that arose when the capstans were delivered and

installed, and that it gave "new value" within the meaning of

sections 547(c)(1) and 547(c)(4) when the lien was satisfied upon

payment in February 2010. Triple "C" argues that, even if its lien

was junior to Comerica Bank, it would still have the right "to

seize and hold" the vessels pending payment and that its release of

that right gave something of tangible value to Gulf Fleet. See

-18-

Triple "C"'s Memorandum in Opposition to Summary Judgment, Case No 12-05024, Dkt. No. 28.

Even assuming the validity of Triple "C"'s lien, the release of the lien does not constitute "new value" for purposes of Sections 547(c)(1) or 547(c)(4) for at least three reasons. First, the Trustee points to evidence in the summary judgment record that Comerica had a ranking preferred ship mortgage on the vessels in question and that there was no equity to which Triple "C"'s lien could attach. As a result, release of Triple "C"'s liens did not "replenish the estate for the value removed by the transfers." In re Hencie Consulting Services, Inc., 2006 WL 3804991 (Bankr. N.D. Tex. Dec. 21, 2006) (citing Jones v. Society Bank & Trust (In re Riggs), 129 B.R. 494, 497 (Bankr. S.D. Ohio 1991)); In re Globe Holdings, Inc., 366 B.R. 186, 193 (Bankr. N.D. Ala. 2007) (no new value because real estate was encumbered by a senior mortgage making the value of any lien release worthless because there was no equity to which it could attach); see also In re Nucorp Energy, Inc., 902 F. 2d 729 (9th Cir. 1990) (transfer from debtor to creditor did not fall within "new value" exception where lien was released but underlying property had no value). In contrast, in the cases cited by Triple "C", the release of a lien resulted in unencumbered property or funds that – unlike the lien release in the present case – would increase "assets distributable to the entire unsecured creditor body." In re Philip Services, Corp., 359

-19-

B.R. 616, 632-33 (Bankr. S.D. Tex. 2006) (release of lien resulted in additional funds to the estate from a wire transfer); In re Fuel Oil Supply & Term., Inc., 837 F.2d 224 (5th Cir. 1988) (cancellation of letter of credit freed up collateral that would be used to satisfy the claims of other creditors); In re Massen Shipping Ind., Inc., 272 B.R. 625 (E.D. La. 2001) (creditor apparently provided new value by extending new credit; but no new value from release of lien).

Second, even if Triple "C" had certain enforceable rights as a junior lien-holder, the waiver or release of those rights does not constitute new value. See, e.g., In re 360 Networks (USA) Inc., 327 B.R. 187, 193 (Bankr. S.D.N.Y. 2005) (release of liens or waiver of right to enforce liens does not constitute new value); In re R. M. Taylor, Inc., 257 B.R. 289, 296 (Bankr. W.D. Mo. 2000); In re Riggs, 129 B.R. 494, 497 (Bankr. S.D. Ohio 1991).

Finally, even if the release of Triple "C"'s lien rights did confer some value, the "new value" defense is only available to the extent that new value is provided to the debtor. Accordingly, the creditor has the burden to establish the extent of the new value provided to the debtor. Triple "C" has not come forward with evidence that would allow a trier-of-fact to attach any value to the lien enforcement rights allegedly released by Triple "C". Accordingly, the Trustee is entitled to summary judgment on Triple

-20-

"C"'s defenses based on the release of its maritime lien as "new value" under sections 547(c)(1) or 547(c)(4).[1]

### CONCLUSION

For the foregoing reasons, the court **GRANTS** the Trustee partial summary judgment with respect to the elements of his section 547(b) preference claim and Triple "C"'s new value defenses under sections 547(c)(1) or 547(c)(2). In all other respects, the Trustee's motion for summary judgment is **DENIED**. The Trustee shall prepare and submit an order that reflects the court's ruling herein.

### ###

---

[1]In his motion for summary judgment, the Trustee also addresses grounds for a defense under 11 U.S.C. § 547(c)(3). Section 547(c)(3) creates an exception for a transfer "that creates a security interest in property acquired by the debtor...." Although Triple "C"'s answer refers to the creation of a maritime lien on the four Gulf Fleet vessels, it does not explicitly plead grounds for a section 547(c)(3) defense -- i.e. that the transfers created a lien that satisfies the additional requirements set forth in section 547(c)(3). Because Triple "C" did not plead this defense (or even address the defense in its summary judgment response) it cannot proceed on that defense at trial. Accordingly, the court will not address this aspect of the Trustee's motion for summary judgment.